UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAVID ROSE<br><br>                     Plaintiff,<br>    vs.<br><br>EAGLE EXPRESS LINES, INC., ET AL.<br><br>                     Defendants | Civil Action No.: 21-cv-02784-BMS |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULE
12(b)(6)
OF EAGLE EXPRESS LINES, INC., 10 ROADS EXPRESS, LLC, 10 ROADS
LOGISTICS, LLC, AND LONE MOUNTAIN TRUCK LEASING, LLC

Defendants, Eagle Express Lines, Inc. ("Eagle Express"), 10 Roads Express, LLC ("10

Roads"), 10 Roads Logistics, LLC ("10 Roads Logistics"), and Lone Mountain Truck Leasing,

LLC ("Lone Mountain") (collectively, "Defendants"), by and through their attorneys, Wilson Elser

Moskowitz Edelman & Dicker LLP, hereby submit this Memorandum of Law in Support of its

Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6).

I.      PROCEDURAL HISTORY OF THE CASE

Plaintiff David Rose ("Rose") initiated this lawsuit on June 23, 2021 against Eagle Express,

10 Roads, 10 Roads Logistics, and Lone Mountain.  Complaint (Docket No. 1). Rose's Complaint

stems from alleged disability and age discrimination, a hostile work environment, and alleged

retaliation by the Defendants:

Count I –    Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
and [3] Failure to Accommodate]
Complaint at ¶¶ 42-51

**Count II –**     Violations of the Family and Medical Leave Act ("FMLA")
               ([1] Retaliation, & [2] Interference)
               Complaint at ¶¶ 52-61

**Count III –**    Violations of the Age Discrimination in Employment Act ("ADEA")
               ([1] Age Discrimination, and [2] Hostile Work Environment)
               Complaint at ¶¶ 62-68

Plaintiff and Defendants executed a Joint Stipulation of Time that allowed Defendants to

file a Response to the Complaint by October 20, 2021. Defendants now timely files this Motion to

Dismiss Plaintiff's Complaint as Plaintiff's Complaint is deficient on its face.

## II.     STATEMENT OF THE FACTS

Defendants note that they deny the allegations made in Plaintiff's Complaint, but for

purposes of this motion to dismiss, they are accepted.

To briefly summarize the facts of the case, Eagle Express is a corporation that operates in

the trucking industry as a contract mail carrier throughout the United States, and was the company

that employed Plaintiff. Complaint at ¶ 14. Lone Mountain is a corporation that operates in the

truck leasing industry, supplying rigs to truck drivers in various states, and provided personnel

and/or human resources support to Eagle Express, 10 Road, and 10 Roads Logistics. Complaint at

¶ 15. 10 Roads and 10 Roads Logistics are corporations that operate in the trucking industry as a

contract mail carrier throughout the United States, and acquired Eagle Express in January 2021.

Complaint at ¶¶ 15-16.

Plaintiff's putative claims are based on the following allegations of fact:

   a)      Plaintiff is a 67 year old male. (Complaint at ¶ 22).

   b)      Plaintiff was employed by Eagle Express and Lone Mountain for 4.5 years,

           commencing in April 2016. (Complaint at ¶ 23).

2

c)   Plaintiff suffers from a heart condition and other health issues so that he had to receive a Department of Transportation ("DOT") medical card every year in order to operate commercial trucks. (Complaint at ¶¶ 26-27).

d)   In October 2020, Plaintiff was medically cleared to resume work following a DOT physical, and was issued a three month DOT medical card pending a follow-up evaluation for a full year card. (Complaint at ¶ 31).

e)   Despite allegedly being medically cleared, Eagle Express and Lone Mountain restricted him from returning to work, with Director of Safety, Kimberly Arnold, allegedly saying, "the company won't have [you] die behind the wheel." (Complaint at ¶ 32).

f)   Defendants have not returned Plaintiff to work, so that Plaintiff believes he was constructively terminated. (Complaint at ¶ 33).

g)   Defendants allegedly failed to accommodate Plaintiff or reinstate Plaintiff to the position he held prior to his FMLA leave or keep his position open during his approximate 2.5 month leave. (Complaint at ¶ 34).

h)   Plaintiff believes he was one of the oldest truck drivers employed by Eagle Express and Lone Mountain. (Complaint at ¶ 37).

i)   Plaintiff claims that Defendants favored younger employees, so that management treated Plaintiff and older workers in a rude and condescending way, gave preferential treatment to younger and/or newly hired truck drivers (including providing them with brand new trucks), gave younger and/or newly hired truck drivers priority with regard to routes, and

3

selectively enforcing policies against Plaintiff and other older workers. (Complaint at ¶ 38).

Additionally, it is undisputed that on or about July 26, 2020, Plaintiff took a medical leave of absence and underwent several procedures in July, August, and September 2020. It is also undisputed that Plaintiff provided a doctor's note clearing him to return to work on September 24, 2020, and a doctor's job duty certification on September 30, 2020; however, Plaintiff's DOT physical expired on September 9, 2020. It is undisputed that drivers cannot lawfully work for Eagle Express as a commercial truck driver without an acceptable physical.

On October 5, 2020, Plaintiff provided Eagle Express with a DOT physical certifying his fitness for three months; however, the physical was inadequate and had discrepancies, including its failure to address or note Plaintiff's medical leave of absence, inaccurate medical history, and the fact it only indicated that Plaintiff's prior health history included high blood pressure, despite his September 9, 2019 physical identifying multiple other health issues that were not identified in the October 5, 2020 physical. Therefore, it is undisputed that Plaintiff was not permitted to work at that time as a current, accurate, DOT physical is a requirement and a condition of Plaintiff's job, and Eagle Express instructed Plaintiff that he needed to obtain a revised DOT physical in order to return to work. It is undisputed that Eagle Express informed Plaintiff that he would be able to return to work as soon as he provided a revised, acceptable DOT physical. To date, Plaintiff has not provided an updated DOT physical.

### A.    Eagle Express Policies

Plaintiff acknowledged on April 21, 2016 that he received and reviewed Eagle Express's various employment policies and instructions. Eagle Express's policies included a Prohibited Harassment Policy, which states, in part:

4

260805012v.1

**POLICY**

No employee of Eagle Express Lines may engage in verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of that person's race, creed, color, religion, sex, national origin, material status, status with regard to public assistance, disability, age, membership on a local human rights commission or sexual orientation, or that of the person's relatives, friends or associates, if the conduct:

1. Has the purpose or effect of unreasonably interfering with the person's work performance; or

2. Otherwise adversely affects that person's employment opportunities.

\*\*\*

**COMPLAINTS RELATING TO PROHIBITED HARASSMENT**

An employee who believes he or she has been subject to harassment prohibited by this policy should report the incident immediately to your supervisor, the HR Director or Safety Director.

The complaining employee will be asked to put the facts surrounding the offensive conduct or communication in writing. Thereafter, the investigation may include interviews with the employee making the charges, the accused employee, and appropriate witnesses, depending upon the individual circumstances of the matter.

Determination of whether prohibited harassment occurred will be made on a case-by-case basis, depending upon the circumstances of the matter, including the type of harassment alleged, the context in which the alleged harassment occurred and any other facts deemed relevant. The employee making the complaint will be advised of the final disposition of the matter.

**PENALTIES FOR PROHIBITED HARASSMENT**

A violation of this policy may be grounds for immediate discipline, up to and including discharge, or other appropriate action. Sanctions, if any, will be determined on a case-by-case basis, after a review of relevant information.

See, Exhibit "F".

5

260805012v.1

Eagle Express's policies also included a section on DOT Physical Regulations, which states, in part:

- All drivers are to comply with the DOT regulations regarding DOT physicals.

- The health history you provide at the time of a physical must be true and accurate. False or inaccurate information may affect your qualifications status and employment status.

- Upon receipt of a new physical, each driver must provide this information to the DMV as soon as possible. Failure to self certify with your state may cause your CDL privileges to be suspended. We cannot allow you to drive if this happens.

See, Exhibit "G".

Plaintiff was not discriminated against, as all of Eagle Express' drivers are subject to the same employment terms, and no driver can run on a contract without a DOT physical clearing as required by the Federal Motor Carrier Safety Administration's ("FMSCA") requirements.

## III.    STATEMENT OF QUESTIONS INVOLVED

1.      Should Defendants 10 Roads Logistics, LLC, 10 Roads Express, LLC, and Lone Mountain Truck Leasing, LLC remain in the case when the only party that employed Plaintiff was Defendant Eagle Express Lines, Inc.?

Suggested Answer: No.

2.      Has Plaintiff sufficiently pled the elements of a cause of action for disability discrimination under the Americans with Disabilities Act ("ADA")?

Suggested Answer: No.

3.      Has Plaintiff sufficiently pled the elements of a case of action for violations of the Family and Medical Leave Act ("FMLA")?

Suggested Answer: No.

260805012v.1

4.      Has Plaintiff sufficiently pled the elements of a cause of action for age discrimination under the Age Discrimination in Employment Act ("ADEA")?

Suggested Answer: No.

5.      Has Plaintiff sufficiently alleged conduct that supports a justiciable claim for punitive damages?

Suggested Answer: No.

## IV.      ARGUMENT

### B.      Standard of Review

Pennsylvania Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. The United States Supreme Court has held that a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Twombly,* 550 U.S. at 555. But, "factual allegations must be enough to raise a right to relief above the speculative level"[1] and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). This standard requires showing more than a mere possibility that a defendant has acted unlawfully. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

---

[1] *Twombly,* 550 U.S. at 555.

possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949); *accord Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 2012 U.S. LEXIS 2594 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

> **C.  10 Roads Express, LLC, 10 Roads Logistics, LLC, and Lone Mountain Truck Leasing, LLC Must be Dismissed because only Eagle Express Lines, Inc. employed Plaintiff**

10 Roads Express, LLC, 10 Roads Logistics, LLC, and Lone Mountain Truck Leasing, LLC must be dismissed from this lawsuit as these entities did not employ Plaintiff and therefore have no relevance to this case. *See*, *e.g.*, *Phillips v. Lock*, 86 A.3d 906 (Pa. Super. 2014) (defendant properly dismissed from lawsuit on a motion to dismiss when there is no proof that the entity had any liability or employed the driver involved in a motor vehicle accident).

Here, only Eagle Express Lines, Inc. employed Plaintiff. The other named Defendants (10 Roads Express, LLC, 10 Roads Logistics, LLC, and Lone Mountain Truck Leasing, LLC) are entities that did not employ Plaintiff and had no involvement with the matters described in this lawsuit. Finally, counsel for Plaintiff and for Defendants had previously discussed and agreed on consideration of dismissing any unnecessary defendants.

Accordingly, Defendants 10 Roads Express, LLC, 10 Roads Logistics, LLC, and Lone Mountain Truck Leasing, LLC must be dismissed from this lawsuit with prejudice for lack of involvement.

> **D.  Plaintiff Has Failed to Establish an Actionable Claim for Violations of the ADA (Count I)**

8

Plaintiff has not alleged facts sufficient to establish a valid claim for violations of the ADA. The ADA prohibits discrimination against a qualified individual with a disability because of the disability of such individual. 42 U.S.C. § 12112(a). The purpose of the ADA is to "prevent employment discrimination of qualified individuals on account of their disability." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 512 (E.D. Pa. 2012) (citing 42 U.S.C. 12112(a)). The Act requires employers to make "reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability, unless the employer demonstrates that such accommodations would impose an undue hardship in the operation of their business." *Id.* (quoting *Fleck v. WILMAC, Corp.*, No. 10-5562, 2011 U.S. Dist. LEXIS 54039, *10 (E.D. Pa. May 19, 2011).

The ADA defines disability as: (A) a physical or mental impairment that substantially limits one of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g). The ADA defines "disability", in pertinent part, as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(1). "Major life activities" include functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. §1630.2(i)(1)(i).

Claims brought under the ADA require application of the burden-shifting framework pronounced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thus, to establish a *prima facie* case of discrimination under the ADA, an employee must prove the following: 1) he is a disabled person within the meaning of the ADA; 2) he is otherwise

9

qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an otherwise adverse employment decision as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *see also Stadtmiller v. UPMC Health Plan, Inc.*, 491 F. App'x 334, 336 (3d Cir. 2012*); Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

The ADA also prohibits employers from retaliating against employees who oppose an act or practice made unlawful by the ADA or because the employee has made a charge under the ADA. 42 U.S.C. 12203(a). To make out a prima facie case of illegal retaliation under the ADA, a plaintiff must show (1) protected employee activity, 2) adverse action by the employer either after or contemporaneous with the employee's protected activity, and 3) a causal relationship between the protected activity and the adverse action. *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002). The same *McDonnell Douglas* burden-shifting framework described above with respect to ADA discrimination claims also applies to ADA retaliation claims. In all cases involving alleged retaliation, a plaintiff must prove that retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of the process. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997). That burden always remains with the plaintiff. *Id.*

In this matter, Plaintiff alleges that he had a heart condition and other health issues so that he had to receive a Department of Transportation ("DOT") medical card every year in order to operate commercial trucks. (Complaint at ¶¶ 26-27). Plaintiff then contends that after he was medically cleared to resume work following a DOT physical, and was given a three month DOT medical card, (Id. at ¶ 31) the Defendants restricted him from returning to work. (Id. at ¶ 32).

10

Plaintiff alleges that he has been constructively terminated because Defendants have not returned Plaintiff to work. (Id. at ¶ 33).

Plaintiff's conclusory allegations of disparate treatment fail to establish a cognizable claim under the ADA. Plaintiff claims that he was discriminated against when he was not returned to the work schedule despite being cleared to work. (Complaint at ¶¶ 33-35). Under the ADA, merely having an impairment is not sufficient to bring a claim under the ADA; rather, a plaintiff must show that the impairment limits a major life activity, and that such limitation is substantial. *McQuaid v. ACTS Ret. Cmtys. – Southampton Estates*, 2005 U.S. Dist. LEXIS 18565, *10 (E.D. Pa. Aug. 8, 2005). As such, a motion to dismiss will be granted where there is no allegation of whether plaintiff's alleged impairment substantially limited any of plaintiff's major life activities. *See*, *McQuaid*, *supra* (motion to dismiss granted where there was no indication of what the plaintiff's impairment was or whether that impairment substantially limited a major life activity).

Here, Plaintiff's Complaint does not identify or allege that his alleged heart troubles or other unidentified health issues substantially limited any of his major life activities. Instead, the Complaint merely claims in a conclusory manner that Plaintiff was discriminated against because he has not yet been returned to work. Because Plaintiff does not allege that his heart troubles or other health issues substantially limited any of his major life activities, his claim of a breach of the ADA cannot survive. *McQuaid*, *supra*.

Further, as stated above, it is undisputed that drivers cannot lawfully work for Eagle Express as a commercial truck driver without an acceptable physical. See, 49 CFR § 391.41. Plaintiff took a medical leave of absence and underwent several procedures in July, August, and September 2020. It is undisputed that Plaintiff provided a doctor's note clearing him to return to work on September 24, 2020, and a doctor's job duty certification on September 30, 2020;

11

260805012v.1

however, Plaintiff's DOT physical expired on September 9, 2020. <u>See</u>, Exhibit "A", September 24, 2020 doctor's note. <u>See also</u>, Exhibit "B", September 30, 2020 doctor's job duty certification. <u>See also</u>, Exhibit "C", David Rose's September 9, 2019 DOT physical. Even when Plaintiff provided Eagle Express with a DOT physical certifying his fitness for three months on October 5, 2020, the physical was inadequate and had discrepancies, including its failure to address or note Plaintiff's medical leave of absence, inaccurate medical history, and the fact it only indicated that Plaintiff's prior health history included high blood pressure, despite his September 9, 2019 physical identifying multiple other health issues that were not identified in the October 5, 2020 physical. <u>See</u>, Exhibit "D", David Rose's October 5, 2020 DOT physical. Therefore, Plaintiff was not permitted to work at that time as a current, accurate, DOT physical is a requirement and a condition of Plaintiff's job, and Eagle Express instructed Plaintiff that he needed to obtain a revised DOT physical in order to return to work. Eagle Express also informed Plaintiff that he would be able to return to work as soon as he provided a revised, acceptable DOT physical.

A current, accurate DOT physical is a requirement of Plaintiff's job as a commercial truck driver. To date, Plaintiff has not provided an updated DOT physical. Therefore, Plaintiff was not discriminated against, as all of Eagle Express's drivers are subject to the same employment terms, and no driver can run on a contract without a DOT physical clearing as required by the Federal Motor Carrier Safety Administration's ("FMSCA") requirements.

Accordingly, Count I of the Complaint should be dismissed pursuant to Rule 12(b)(6) for failing to state a cognizable cause of action under the ADA.

E.      **Plaintiff Has Failed to Establish an Actionable Claim for Violations of the FMLA (Count II)**

As a matter of law, plaintiff has not alleged facts sufficient to establish a valid claim for violations of the FMLA. In analyzing a claim of retaliation for alleged use of FMLA leave, a court

12

follows the *McDonnell Douglas* framework. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 151-52 (3d Cir. 2017). Specifically, in order to establish a claim for retaliation for alleged use of FMLA leave, a plaintiff must first establish a prima facie case of discrimination. *Id.* If the Plaintiff succeeds, then the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment decision. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a pretext for discrimination. *Id.*

In order to prove retaliation, the plaintiff must show: 1) he invoked her right to FMLA-qualifying leave; 2) he suffered an adverse employment decision; and 3) the adverse action was causally related to his invocation of rights. *Soutner v. Penn State Health*, 2021 U.S. Dist. LEXIS 867, *7 (3d Cir. Jan. 13, 2021). Further, "[w]here an employer provides evidence that the reason for the adverse employment action taken by the employer was an honest belief that the employee was misusing FMLA leave, that is a legitimate, nondiscriminatory justification for the discharge." *Capps*, 847 F.3d at 152.

In his Complaint, Plaintiff generally alleges that he suffered disability discrimination (Complaint at ¶¶ 33-35) and that Defendants violated the FMLA by allegedly terminating Plaintiff for requesting or exercising his FMLA right; considering his FMLA rights in its decision to allegedly terminate him; failing to provide Plaintiff with proper FMLA paperwork; allegedly terminating Plaintiff to intimidate him and prevent him from taking FMLA leave in the future; engage in conduct which discouraged Plaintiff from exercising his FMLA rights; and failing to reinstate Plaintiff to the same or a similar position on his return from FMLA leave. (Complaint at ¶ 59).

However, Plaintiff's Complaint does not allege that he was treated differently from anyone else on account of his disability; nor (as explained above) has he sufficiently alleged a claim for

13

disability discrimination because he has not alleged that he suffered an impairment that significantly impacted his ability to perform major life activities. *McQuaid*, *supra*. There is also no allegation to substantiate that any of the Defendants' alleged actions exhibited any disability animus. These conclusory allegations are not enough to meet Plaintiff's burden for a breach of violations of the FMLA.

Further, as stated above, it is undisputed that drivers cannot lawfully work for Eagle Express as a commercial truck driver without an acceptable physical. Plaintiff's DOT physical expired on September 9, 2020. See, Exhibit "C", David Rose's September 9, 2019 DOT physical. Even when Plaintiff provided Eagle Express with a DOT physical certifying his fitness for three months on October 5, 2020, the physical was inadequate and had discrepancies. See, Exhibit "D", David Rose's October 5, 2020 DOT physical. Therefore, Plaintiff was not permitted to work at that time as a current, accurate, DOT physical is a requirement and a condition of Plaintiff's job, and Eagle Express instructed Plaintiff that he needed to obtain a revised DOT physical in order to return to work. Eagle Express also informed Plaintiff that he would be able to return to work as soon as he provided a revised, acceptable DOT physical.

A current, accurate DOT physical is a requirement of Plaintiff's job as a commercial truck driver. To date, Plaintiff has not provided an updated DOT physical. Therefore, Plaintiff was not discriminated against, as all of Eagle Express's drivers are subject to the same employment terms, and no driver can run on a contract without a DOT physical clearing as required by the Federal Motor Carrier Safety Administration's ("FMSCA") requirements.

Therefore, Plaintiff's Complaint must be dismissed.

**F.      Plaintiff Has Failed to Establish an Actionable Claim Under the ADEA**

14

As a matter of law, plaintiff has not alleged facts sufficient to establish a valid claim for

violations of the ADEA. The Age Discrimination in Employment Act ("ADEA") provides:

(a) EMPLOYER PRACTICES It shall be unlawful for an employer --

> (1) To fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

> (2) To limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

> (3) To reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. §629.

To prove an age discrimination claim based on indirect evidence (such as an alleged

constructive termination), the plaintiff must show, 1) he was a member of a protected class (i.e.,

he was over 40) 2) he is qualified for the position, 3) he suffered an adverse employment decision,

4) and he was ultimately replaced by a person sufficiently younger to permit an inference of age

discrimination. *Duffy v. Paper Magic Group*, 265 F.3d 163, 167 (3d Cir. 2001). Additionally, "[a]

prima facie case creates an inference of unlawful discrimination. The burden of production then

shifts to the employer who can dispel the inference by articulating a legitimate, nondiscriminatory

reason for its actions . . . If the employer meets this burden, the employee must then prove by a

preponderance of the evidence that the articulated reasons are a pretext for discrimination . . .

Where the employee is unable to establish a prima facie case, however, no inference of

discrimination is raised and the employer has no burden to proffer a reason for any action." *Id.* at

167, n.1 (citations omitted).

260805012v.1

Plaintiff alleges that he was treated differently by Defendants on the basis of his age, and suffered an adverse employment action. (Complaint at ¶¶ 63-67). However, there is no allegation that Plaintiff was allegedly replaced by a younger worker sufficient to meet a claim for breach of the ADEA. *See*, *Duffy*, *supra*. Even if he could assert a claim for violations of the ADEA (which he cannot), the alleged actions (not returning Plaintiff to work when he had the temporary three month DOT card) does not establish any age discrimination whatsoever, as Plaintiff was not actually terminated and there is no allegation that any of Defendants' actions were motivated by age sufficient to warrant a claim under the ADEA.

Further, as explained above, it is undisputed that drivers cannot lawfully work for Eagle Express as a commercial truck driver without an acceptable physical. Plaintiff's DOT physical expired on September 9, 2020. See, Exhibit "C", David Rose's September 9, 2019 DOT physical. Even when Plaintiff provided Eagle Express with a DOT physical certifying his fitness for three months on October 5, 2020, the physical was inadequate and had discrepancies. See, Exhibit "D", David Rose's October 5, 2020 DOT physical. Therefore, Plaintiff was not permitted to work at that time as a current, accurate, DOT physical is a requirement and a condition of Plaintiff's job, and Eagle Express instructed Plaintiff that he needed to obtain a revised DOT physical in order to return to work. Eagle Express also informed Plaintiff that he would be able to return to work as soon as he provided a revised, acceptable DOT physical.

A current, accurate DOT physical is a requirement of Plaintiff's job as a commercial truck driver. To date, Plaintiff has not provided an updated DOT physical. Therefore, Plaintiff was not discriminated against, as all of Eagle Express's drivers are subject to the same employment terms, and no driver can run on a contract without a DOT physical clearing as required by the Federal Motor Carrier Safety Administration's ("FMSCA") requirements.

260805012v.1

Accordingly, Plaintiff's putative claims of violations of the ADEA as generally alleged in the Complaint should be dismissed as a matter of law, and Plaintiff's Complaint must be dismissed.

**G.      Plaintiff Has Failed to Establish an Actionable Claim for Punitive Damages**

In this action Plaintiff seeks the recovery of punitive damages. See, Complaint at p. 13. "To sustain a claim for punitive damages under the ADA . . . a plaintiff must show that the defendants acted with malice or reckless indifference toward [him]." *James v. Teleflex, Inc.*, 1998 U.S. Dist. LEXIS 20400, *45 (E.D. Pa. Dec. 22, 1998). Additionally, "[t]o sustain a claim for punitive damages, or double liquidated damages, under the ADEA in a disparate treatment case, a plaintiff must show that the violation of [his] rights was willful in that the employer knew or showed reckless disregard for whether its conduct violated [his] rights as well as some additional evidence of outrageous conduct." *Id.* at *46.

In the present matter, the Complaint contains no material facts that support allegations of punitive damages. Plaintiff makes generalized, conclusory allegations, such as, "Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future." Complaint at p. 13. Plaintiff's bare, conclusory allegations are not supported by any factual averments showing that any of the Defendants knowingly and intentionally violated Plaintiff's rights. Furthermore, Plaintiff has failed to plead any facts to support that Eagle Express (or any of the other defendants), or its agents or employees, engaged in discriminatory practices with an evil motive or with reckless indifference to his rights.

17

Plaintiff's claim for punitive damages does not provide any factual basis for such a claim.

Plaintiff has failed to plead the requisite facts to support a claim of punitive damages. Therefore,

Plaintiff's putative claims for punitive damages should be dismissed under Rule 12(b)(6).

## V.      CONCLUSION

As mentioned above, Defendants 10 Roads Express, LLC, 10 Roads Logistics, LLC, and

Lone Mountain Truck Leasing, LLC must be dismissed from this matter with prejudice as these

entities were not involved in the matters alleged in the Plaintiff's Complaint, and are not relevant

to this case.

All Defendants, Eagle Express Lines, Inc., 10 Roads Express, LLC, 10 Roads Logistics,

LLC, and Lone Mountain Truck Leasing, LLC respectfully requests that the Court grant their

Motion to Dismiss, dismiss the Plaintiff's Complaint *with prejudice*, and grant any other relief

deemed appropriate by the Court.

Respectfully Submitted,

Dated:  October 20, 2021

*/s/ Kathleen Wilkinson*
Kathleen Wilkinson, Esq.
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
Two Commerce Square
2000 Market Street - Suite 3100
Philadelphia, PA  19103
Tel.:  (215) 627-6900
Email: kathleen.wilkinson@wilsonelser.com

*Attorneys for Defendants Eagle Express Lines, Inc.,*
*10 Roads Express, LLC, 10 Roads Logistics, LLC,*
*and Lone Mountain Truck Leasing, LLC*

260805012v.1

## CERTIFICATE OF COMPLIANCE

Undersigned Counsel for Defendants, Eagle Express Lines, Inc., 10 Roads Express, LLC, 10 Roads Logistics, LLC, and Lone Mountain Truck Leasing, LLC, hereby certifies the foregoing Memorandum of Law in Support of its Motion to Dismiss complies with Local Rule 5.1.3 regarding personal identification information.


By:     */s/Kathleen D. Wilkinson*
        Kathleen D. Wilkinson, Esquire

Dated:  October 20, 2021

260805012v.1