IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID ROSE,**<br>    Plaintiff,<br><br>v.<br><br>**EAGLE EXPRESS LINES, INC., et al,**<br>    Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  21-2784 |

**MEMORANDUM OPINION**

Plaintiff David Rose seeks money damages from his employer and its successors in interest, Defendants Eagle Express Lines, Inc., 10 Roads Express, LLC, 10 Roads Logistics, LLC, and Lone Mountain Truck Leasing, LLC (collectively, "Defendants"), for violating a variety of state and federal statutes.  The gravamen of Rose's Amended Complaint is that he was subjected to unlawful discrimination after requesting time off to undergo cardiovascular surgery.  Presently pending is Defendants' motion for summary judgment on all claims, pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the motion will be granted in part and denied in part.

**I.   FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are undisputed.  Rose is a truck driver who has maintained a Commercial Driver's License for approximately 40 years.  He began working for Defendant Eagle Express in 2016, when he was 63 years old, and he hauled mail on the company's Philadelphia-to-Melborn, Ohio route.  As a commercial truck driver, Rose was required to possess a valid Department of Transportation ("DOT") physical examination certificate and meet all DOT physical regulatory requirements.  In September 2019, Rose was issued a one-year medical certificate following a physical examination: This despite suffering from various cardiovascular conditions, which he managed with medication.  The following

1

summer, though, blockages were identified in Rose's heart and legs, and he needed immediate cardiovascular surgery to install stents to relieve those blockages.  He requested a medical leave of absence to undergo this procedure, pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, which Defendants approved.  The surgery was a success, and by September 2020, Rose's personal cardiologist cleared him to return to work.

Because his previous DOT physical certificate had expired during his FMLA leave, Defendants directed Rose to Dr. Ronald Wolfe for a new physical examination.  Rose met with Dr. Wolfe, who concluded that Rose had "no impairment to driving" and issued him a three-month medical certificate.  Rose provided this certificate to his manager, Denise Beckel, who refused to accept it.  At her deposition, Beckel testified that during her review of Rose's medical record, she identified "discrepanc[ies]" between this physical and Rose's September 2019 physical.  Specifically, she explained that on his most recent medical history questionnaire, Rose failed to identify that he had several conditions—including "heart disease, heart attack, bypass or other heart problems"—which he had disclosed on previous years' questionnaires.  (For his part, Rose testified that while some of the responses on his 2020 questionnaire were inadvertently checked "yes" rather than "no," Dr. Wolfe was nonetheless aware of his medical history when he issued the medical certificate.)  As a result of these discrepancies, Beckel provided Rose's medical file to a third-party medical review officer, Dr. Bruce Horton, for a second opinion.

Dr. Horton reviewed Rose's medical records and identified "marginal recertification issues."  Specifically, his report described "mild to moderately impaired Left Ventricular function with an ejection fraction of 39%," which he described as "at best [] of concern."  He further noted that Rose was overweight but had not obtained a sleep study, and that while Rose's symptoms had improved, nothing "in []his presented documents indicated he was without

symptoms."

Pointing to the results of Dr. Horton's review and the discrepancies in Rose's medical history questionnaires, Beckel and her manager, Kimberly Arnold, refused to permit Rose to return to work as a truck driver—notwithstanding the medical certificate he obtained from Dr. Wolfe.  In an email dated October 9, 2020, Arnold informed Rose that in order to be reinstated, he was required to show "40% or greater left ventricular ejection fraction (cardiologist release specifically noting this)," blood pressure readings on three different days below 140/90, and "confirmation of being in the process of getting sleep apnea tested . . . .  Results must be taken to original requesting medical examiner."  Rose's request that his employer pay for the sleep apnea study was denied.  He testified that during these back-and-forths with his employer, HR personnel informed him that they did not want him to return to work because "they didn't want me to die under the steering wheel."

## II. LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion."  *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record

evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

Rose's Amended Complaint presses a number of claims, which fall into four overarching categories: (1) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. C.S. § 951 *et seq.*, and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code § 9-1101 *et seq.*; (2) disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the PHRA, and the PFPO; (3) failure to accommodate and retaliation, in violation of the ADA, PHRA, and PFPO; and, (4) violations of Rose's FMLA rights.[1] Each category of claims will be addressed in turn.

#### A. Age Discrimination[2]

##### i. *Administrative Exhaustion*

At the outset, Defendants argue that Rose's age discrimination claims fail as a matter of

---

[1] The Amended Complaint also alleges that the Defendants subjected Rose to a hostile work environment as a result of his age and disability, but Rose abandoned these claims in his response to the Defendants' summary judgment motion.

[2] Claims under ADEA, PHRA, and PFPO are generally evaluated in tandem, *see, e.g.*, *Higgins v. MetLife Inc.*, --- F.Supp.3d ---, 2023 WL 5309893, at *8-9 (E.D. Pa. 2023), and the parties agree that this is appropriate here.

4

law, as he did not exhaust his administrative remedies before filing this suit.  Specifically, they maintain that the charge Rose filed with the Equal Employment Opportunity Commission ("EEOC") was "completely devoid of any allegations that he was discriminated against . . . on the basis of this age."

A plaintiff must generally exhaust all administrative remedies before bringing a claim for judicial relief.  *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997).  "[T]he main purpose of exhaustion requirements is to provide courts with the benefit of an agency's expertise and serve judicial economy by having the administrative agency compile the factual record and by giving agencies the opportunity to settle disputes through conference, conciliation, and persuasion." *Higgins*, 2023 WL 5309893, at *7 (internal quotation marks omitted).  Thus, before filing an age discrimination lawsuit, plaintiffs must first file a charge with the EEOC and/or its state counterpart.  29 U.S.C. § 626(d); *see Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019).  To determine whether this administrative charge satisfies the exhaustion requirement, courts consider "whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom."  *Kopko*, 776 F. App'x at 773 (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (alterations in original)).

Here, the record shows that within the time limit set by the relevant statutes, Rose filed a charge with the EEOC and Pennsylvania Human Relations Commission alleging that despite being medically cleared to do so, his employer "refused to let me return to work or follow up with me about scheduling me."  The record further shows that on the applicable form, Rose checked the box indicating that "age" was a cause of this discrimination, and his narrative described himself as "a 67-year-old male"—placing him within the protections of ADEA,

PHRA, and PFPO. This was sufficient to put the agencies on notice that Rose believed himself to be the victim of age discrimination, permitting them to open the investigations into the same. And while Defendants argue Rose alleged "no facts or allegations supporting a claim of discrimination . . . based on age," his administrative charge in fact reported the comment from HR personnel about not "d[ying] behind the wheel" that now serves as the basis for his ADEA claim, as discussed below. Particularly in light of the Third Circuit's admonition that "the scope of the original charge should be liberally construed," as administrative charges "are most often drafted by one who is not well versed in the art of legal description," *Hicks v. ABT Assoc., Inc.*, 575 F.2d 960, 965 (3d Cir. 1978), this was sufficient to satisfy the requirement that Rose exhaust his available administrative remedies.

### ii. Prima Facie *Case*

Because the record contains no direct evidence of age discrimination, Rose's claim of age discrimination must be analyzed under the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff bears the initial burden of establishing the *prima facie* case—*i.e.*, that "(i) the plaintiff was a member of the protected class, i.e., was 40 years of age or older, (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Once this showing is made, the burden shifts to the defendant, who must offer "a legitimate, nondiscriminatory reason for the discharge." *Id.* If the defendant does so, the burden shifts back, and the plaintiff may survive summary judgment as a matter of law only by submitting evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2)

believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

With regards to Rose's *prima facie* case, the parties' dispute whether he has adduced evidence showing he was replaced by a "sufficiently younger person," as well as whether he suffered an adverse employment action. As relevant to the question of his replacement, Rose testified at his deposition that his trucking route was taken over by a man in his forties—an age difference that is sufficient under the statute. *See Showalter v. Univ. of Pittsburgh Med. Cent.*, 190 F.3d 231, 236 (3d Cir. 1999) (holding that while ADEA draws no bright lines, evidence of an eight-year age gap was sufficient to satisfy this element of the plaintiff's *prima facie* case). Defendants do not claim otherwise. They argue, however, that the replacement need not merely be younger, but also a "similarly situated employee," pointing to language from *Anderson v. Cons. Rail Corp.*, 297 F.3d 242, 250 (3d. Cir. 2002). Specifically, the Defendants argue that because Rose "is not medically qualified to drive under DOT regulations," while the driver hired to replace him is, the two are not similarly situated, and so the fact that he was replaced by a younger driver does not support an interference of age discrimination.

But the age discrimination claims at issue in *Anderson* arose in the context of a reduction-in-force by the employer, and that fact was key to the Third Circuit's reasoning. As the court explained, "ADEA is not a bumping statute," and permitting plaintiffs to establish a *prima facie* age discrimination case based solely on the retention of younger employees during a reduction-in-force would effectively "guarantee[] a protected employee a job at the expense of a sufficiently younger employee." *Id.*; *see also Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 610 (11th Cir. 1987) ("[N]othing in the ADEA requires that younger employees be fired so that

7

employees in the protected age group can be hired.")  "Thus, to present a prima facie case raising an inference of age discrimination in a reduction in force situation, the plaintiff must show, as part of the fourth element, that the employer retained someone similarly situated to him who was sufficiently younger." *Id.*  In a subsequent case, the Third Circuit reiterated that the "similarly situated employee" requirement announced in *Anderson* applies "in the first step of the burden shifting analysis *in a reduction-in-force case* brought under the ADEA." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004) (emphasis added).  And it elaborated that when applying this requirement, relevant considerations include "job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Id.* Applying those factors, the court concluded that while an insurance company's regional vice president was similarly situated to another regional vice president, he was not similarly situated to the other managers whom he directly supervised. *Id.* at 306.

In this case, however, Rose's age discrimination claims do not arise in the context of a reduction-in-force, and so the "bumping" concerns identified in *Anderson* and its progeny are not present.  And outside that context, the Third Circuit has never held that a plaintiff in this situation must demonstrate that a replacement is "similarly situated" as part of their *prima facie* case.  To the contrary, it has repeatedly stated that evidence of replacement by a "sufficiently younger person" is, by itself, enough "to support an inference of discriminatory animus." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  To hold otherwise would ignore this guidance, as well as the longstanding principle that a plaintiff's burden at this stage "is not meant to be onerous, as [the first] step in the *McDonnell Douglas* framework merely provides 'a sensible, orderly way to evaluate the evidence' to determine whether it is adequate to create an inference of discrimination." *Cellucci v. RBS Citizens, N.A.*, 987 F.Supp.2d 578, 589 (E.D. Pa.

8

2013) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). And this is especially true here, where Defendants' argument as to why Rose's replacement was not "similarly situated"—*i.e.*, that unlike Rose, the driver who replaced him was medically qualified—is also their purported non-discriminatory basis for refusing to reinstate him.[3]

Second, Defendants argue—both here and in the context of Rose's ADA/FMLA claims—that Rose did not suffer an adverse employment action. Specifically, they argue that he voluntarily took a leave of absence to undergo surgery, and that their refusal to reinstate him as a driver merely retained this status quo pending further improvement to his physical condition. But as the cases Defendants cite make clear, "adverse employment action" is broadly construed to include any action by an employer "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. S.E. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). Plainly, the failure to reinstate an otherwise qualified employee following a medical leave of absence falls within this definition.

### iii. Pretext

Because Rose made out his *prima facie* case of age discrimination, the burden shifts to his employer to offer "a legitimate, nondiscriminatory reason for the discharge." *Keller*, 130 F.3d at 1108. Here, the Defendants point to Rose's ongoing health issues as a nondiscriminatory

---

[3] This is not to say that plaintiffs in ADEA cases are under no obligation to identify "similarly situated" comparators. At the third step of the *McDonnell Douglas* framework, for example, a plaintiff who relies on evidence of inconsistent treatment to demonstrate pretext "has the burden of demonstrating that *similarly situated persons* were treated differently." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998) (emphasis added). This is because context matter when comparing two employees, and "[a] decision adversely affecting an older employee does not become a discriminatory decision merely because one younger employee is treated differently." *Id.* at 646. But the Third Circuit has always been careful to distinguish the "new level of specificity" required at the pretext stage from the evidence required to establishing the *prima facie* case, "where the inquiry is based on a few generalized factors" and the plaintiff's burden "is not onerous." *Id.*

9

basis for their refusal to reinstate him as a commercial truck driver. Rose does not dispute that this is a satisfactory explanation under *McDonnell Douglas*, so the burden shifts back to him to identify evidence from which a factfinder could conclude that this explanation is pretextual. *Id.*

Rose has not met that burden. To show a dispute of material fact on this point, Rose points to "evidence[] [of] the discriminatory treatment he was subjected to at the hands of Defendants' management" and "comments made to him referencing his advanced age." As to the latter point, Rose testified at his deposition that an unnamed person in his employer's HR department told him that he could not return to work because "they didn't want me to die under the steering wheel or some crap like that." But while Rose argues that this comment "directly referenced his . . . advanced age," a reasonable factfinder could at most construe it as a reference to Rose's recent cardiovascular surgery. And in any event, "[s]tray remarks by non-decisionmakers . . . are rarely given great weight," *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992), and Rose's testimony fails to even establish who made this remark—let alone that it was someone involved in the decision to not reinstate him.

With regards to Rose's other example of discriminatory treatment, his brief states that while Defendants required older drivers to drive older trucks, "younger drivers were provided with brand new trucks." But the only evidence in the summary judgment record to support this claim comes from the deposition of one of his managers, Lewis Jones, who testified that while Rose had occasionally complained about wanting a new truck, "we don't assign trucks by driver; we assign them by route." Jones went on to explain that a new truck had, in fact, been assigned to Rose's route in 2018, but that the driver who used that truck on the final leg of the hauling route "got into a very serious accident." At that point, another new truck could not be assigned to Rose's route, as they "didn't have any more new trucks available." Nothing about this

testimony—which is undisputed by anything else in the record—could lead a reasonable jury to conclude that Rose was subjected to discriminatory treatment at the hands of Defendants' management, and thereby conclude that their reason for his termination was pretextual. Because Rose has failed to show a dispute of material fact on this point, summary judgment will be granted on his claims of age discrimination.

### B.  Disability Discrimination[4]

#### i.  Prima Facie *Case*

As with his age discrimination claims, Rose's claims of disability discrimination rely on circumstantial evidence, and must therefore be evaluated under the *McDonnell Douglas* framework as well. *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Thus, the first step is to determine whether Rose has made out his *prima facie* case—*i.e.*, that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Id.*

Defendants argue that Rose failed to do so for two reasons. First, they argue that Rose is not disabled. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual," as well as "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A). "Major life activities," in turn, is defined as including a range of major bodily functions, and Defendants concede that this includes circulatory and cardiovascular functions. They claim, however, that Rose does not actually suffer from such a condition, pointing to deposition testimony in which he testified that

---

[4] Once again, the parties agree that Rose's disability discrimination claims under the ADA, PHRA, and PFPO can be evaluated jointly.

"I don't think I have a serious condition," as well as documentation from his personal physician describing him as cleared to return to work without restrictions. Thus, Defendants argue, because Rose's medical issues have not "substantially limited him in any major life activity," he fails to meet the ADA's definition of disabled.

This argument is fatally circular. Defendants stated reason for refusing to reinstate Rose is his ongoing cardiovascular issues, which they argue make him unfit to return to his prior trucking job. And pursuant to the applicable EEOC regulation, "working" is a major life activity. 29 C.F.R. § 1630.2(i)(1)(i); *see Deane v. Pocono Med. Cent.*, 142 F.3d 138, 143 n.4 (3d Cir. 1998) (en banc) ("Regulations such as these are entitled to substantial deference."). Thus, it does not matter whether Rose's cardiovascular condition meant that he was unable to return to work, as Defendants stated when refusing to reinstate him, or not, as Rose argues now. Both real impairments (*i.e.*, actually being unable to return to work) and perceived impairments (*i.e.*, merely being perceived as unable to return to work) fall within the ADA's definition of "disability." 42 U.S.C. § 12102(1)(A).

Second, Defendants argue that Rose was not "qualified to perform the essential functions of the job," namely, possess a valid DOT physical and meet all mandatory physical fitness requirements. But while commercial truck drivers must indisputably be physically qualified as an "essential function of the[ir] job," *see Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 570 (1999), there is a genuine dispute of fact regarding Rose's medical status. Most significantly, the summary judgment record contains both the medical certification issued by Dr. Wolfe after finding Rose qualified to work as a commercial driver, pursuant to 49 C.F.R. §§ 391.41-391.49, and Dr. Horton's subsequent opinion that there were "marginal recertification issues" as a result of Rose's ventricular ejection fraction and the missing sleep study. Which of these opinions was

correct cannot be determined at the summary judgment stage and must instead be resolved by the factfinder.[5]

Attempting to show otherwise, Defendants point to *McNelis v. Pa. Power & Light Co.*, 876 F.3d 411 (3d Cir. 2017), for the proposition that an employee is not qualified as a matter of law when they fail to pass a mandatory physical fitness examination. But in that case, there was no real dispute regarding the employee's physical health; the only medical evaluation in the record determined found him "not fit for duty" as a nuclear power plant guard as a result of ongoing mental health and alcohol abuse issues. *Id.* at 414. As the Third Circuit explained, "in the ADA context, a court should not 'second-guess' a physician's determination that an employee failed to meet he regulatory requirements of his job." *Id.* at 418. Here, in contrast, Dr. Wolfe determined that that Rose met the regulatory requirements to work as a commercial truck driver. It was Defendants who "second-guess[ed]" this determination and refused to reinstate Rose. "The burden to establish a *prima facie* case is a not an onerous one," *Decker v. Alliant Tech., LLC*, 871 F.Supp.2d 413, 425 (E.D. Pa. 2012), and Rose's evidence that Dr. Wolfe issued him the required DOT medical certificate is sufficient to establish the "qualified to perform the essential functions of the job" element.

    ii.  **Pretext**

---

[5] Defendants make two further arguments in a similar vein, neither of which succeeds. First, they argue that the certification issued by Dr. Wolfe was "invalid" as a result of the discrepancies between Rose's 2019 and 2020 medical history questionnaires. But Dr. Wolfe's report discusses Rose's recent surgery to install stents, describes his recovery as "good," and notes that he had been cleared to return to work by his cardiologist. As a result, a reasonable jury could conclude that, consistent with Rose's testimony on this point, Dr. Wolfe had all the information he needed to accurately assess Rose's physical health—the inconsistent responses in Rose's medical history questionnaire notwithstanding.

Second, Defendants confusingly state in their Reply brief that Rose "to date admits he does not possess a valid DOT physical." But portions of the summary judgment record they cite—portions of Rose's deposition transcript, and an unanswered interrogatory question—do not support this contention. And the record includes a copy of the medical certificate from Dr. Wolfe, which was issued upon a Rose's successful completion of his DOT physical.

As before, Rose does not dispute that the Defendants' stated explanation for refusing to reinstate him—that he was unqualified to drive commercial trucks—satisfies their burden under *McDonnell Douglas* to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Salley v. Circuit City Stores, Inc.*, 160 F.3d 977, 981 (3d Cir. 1998). Thus, the burden shifts back to Rose, and the question becomes whether he has adduced evidence from which a reasonable juror could "either disbelieve the employer's articulated legitimate reasons or believe that a discriminatory reason was more likely than not a cause of the employer's action." *Id.*

Here, unlike his age discrimination claims, Rose has established a genuine dispute of material fact on this point. Recall that a plaintiff can show pretext "by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764. In this case, there are at least two pieces of evidence that could permit a jury to find in Rose's favor on that point. First, the record contains a copy of the medical certificate issued by Dr. Wolfe pursuant to 49 C.F.R. §§ 391.41-391.49, as well as the notes of Rose's personal cardiologist describing him as fit to return to work without restrictions. While Dr. Horton's subsequent evaluation reached a different conclusion, a reasonable jury might nonetheless determine that Rose was medically fit to return to work as a commercial truck driver.

Second, while Defendants have repeatedly pointed to the inconsistencies between Rose's 2019 and 2020 medical history questionnaires as their basis for questioning his fitness to return to work, Rose has adduced evidence that this explanation was pretextual. Specifically, he testified at his deposition that Defendants permitted "everybody" who received a DOT medical

certificate of any duration to drive, but that he was not permitted to. And he likewise pointed out that there had been inconsistencies in previous years' medical history questionnaires, but that Defendants only acted in 2020—after he informed them of his disability. This kind of inconsistent treatment is precisely the sort of evidence that permits an inference of pretext. *See Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 74 (3d Cir. 1986) (evidence of disparate treatment of similarly situated employees may support an inference of pretext). And while Defendants dispute the accuracy of Rose's testimony, their objections merely highlight how this is an issue of fact that must be resolved by the jury.

### C. Failure to Accommodate

In addition to disability discrimination, Rose's Amended Complaint further claims that Defendants failed to accommodate his disability, in violation of the ADA, PHRA, and PFPO. But because he cannot make out his *prima facie* case as to those claims, Defendants' motion for summary judgment will be granted.

A failure to accommodate claim has four elements: (1) the plaintiff "was disabled, and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Here, Rose failed to make out these elements. His only specific request to his employer was for time off to undergo cardiovascular surgery. While "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA," *id.* at 156-57, the summary judgment record contains no evidence that Defendants failed to accommodate his request. To the contrary—it is undisputed that Defendants granted Rose's request for FMLA

leave, and that he took it. And while Rose argues in his brief that Defendants "repeatedly deterred him from taking future medical leaves of absences as necessary," the portions of the record he cites do not support this contention.

### D. FMLA

#### i. Prima Facie *Case*

Rose's final claim is FMLA retaliation. To prevail on this claim, Rose must initially make out the *prima facie* case that: (1) he invoked his right to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and, (3) the adverse action was causally related to his invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Cent.*, 691 F.3d 294, 302 (3d Cir. 2012).[6] Here, there is no dispute that Rose was entitled to invoke FMLA leave prior to his cardiovascular surgery, or that he actually did so. And as previously discussed, *see supra* note 3, Defendants' failure to reinstate Rose following this leave constituted an adverse employment action. Thus, the only question is whether there exists a dispute of material fact as to whether this adverse action was causally related to that invocation of his FMLA rights. *See id.* at 307 ("[Plaintiff] must point to evidence sufficient to create an inference that a causative link exists between [his] FMLA leave and [his] termination.").

Here, that question may be easily answered in the affirmative. When making out the *prima facie* case for FMLA retaliation, "temporal proximity" between the protected activity and the adverse action "is sufficient standing alone to create an inference of causality and defeat

---

[6] Rose also alleges that the Defendants interfered with his FMLA rights. While FMLA interference is technically a distinct claim from FMLA retaliation, the two "are closely intertwined," *Lichtenstein*, 691 F.3d at 301, and in this case they are indistinguishable. To prevail on an interference claim, a plaintiff must show that: (1) he was entitled to take FMLA leave; and, (2) his employer interfered with his right to do so. *Id.* at 312. Here, there is no dispute that Rose was entitled to take FMLA leave. And because the statute generally protects an employee's right to be reinstated following FMLA leave, *see* 29 U.S.C. § 2614(a)(1), an unjustified refusal to do so would constitute interference with that right. As such, Rose's FMLA interference claim rises and fall on the same evidence as his FMLA retaliation claim.

summary judgment." *Id.* (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," *LeBoon*, 503 F.3d at 233, Rose was not permitted to return to work from his FMLA leave at all—effectively making time between the protected activity and adverse action zero days. This is well-below what the Third Circuit has previously recognized as an "unduly suggestive" temporal proximity. *See Lichtenstein*, 691 F.3d at 307 (seven days); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days); *see also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (three weeks).

### ii. Pretext

Rose does not dispute that Defendants offered a legitimate, nondiscriminatory reason for refusing to reinstate him, and instead seeks to show that "that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 765. He has met this burden. For the reasons outlined above, Rose has adduced evidence from which a reasonable factfinder could conclude that his employer acted with an impermissibly discriminatory motive when refusing to reinstate him. In light of this genuine dispute of material fact, summary judgment on Rose's FMLA claims is improper.[7]

### E. Damages

Finally, Defendants contend that Rose's claim for punitive damages must be dismissed as

---

[7] For the same reasons, summary judgment will be denied as to Rose's claims of ADA/PHRA/PFPO retaliation. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and, (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). As noted above, Rose's request for FMLA leave was a request for a reasonable accommodation—a protected employee activity. The other elements of the claim are identical to his FMLA retaliation claim, and that analysis applies here as well: Rose has adduced evidence sufficient to both make out the remaining elements of the *prima facie* case and show a genuine dispute of fact regarding his employer's motive.

a matter of law, and they likewise argue that his claim for compensatory damages should be limited to the 3-month period during which his medical certificate from Dr. Wolfe was valid. But "[a]n issue is waived unless a party raises it in its opening brief," *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994), and these arguments regarding damages only appear in Defendants' Reply brief. As such, they are deemed waived, and the Court declines to consider them. *See, e.g.*, *Hayes v. Silver, Langsam & Weitzman, P.C.*, 441 F.Supp.3d 62, 66 n.4 (E.D. Pa. 2020) ("[T]he Court declines to consider arguments raised for the first time in a Reply brief."); *Houser v. Feldman*, 569 F.Supp.3d 216, 223 n.2 (E.D. Pa. 2021) ("If a party chooses to wait until reply briefing to raise its arguments, then the 'Court need not address them.'") (quoting *Filer v. Foster Wheeler LLC*, 994 F.Supp.2d 679, 692 (E.D. Pa. 2014)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted as to Rose's age discrimination and failure to accommodate claims and denied as to his other claims. An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**